**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER SULLIVAN, Individually and on behalf of all others similarly situated,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO. 4:26-cv-04076-JTS** |
| **THE GOODYEAR TIRE & RUBBER COMPANY,** | § | **JURY TRIAL DEMANDED** |
| **Defendant.** | § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) AND ARK. CODE ANN. § 11-4-218** |

# PLAINTIFF'S ORIGINAL COLLECTIVE ACTION COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff Christopher Sullivan ("Plaintiff") brings this action individually and on behalf of all others similarly situated (the "Putative Collective Members," and together with Plaintiff, "Plaintiff and the Putative Collective Members") who worked for Defendant The Goodyear Tire & Rubber Company ("Goodyear") at its Texarkana tire plant at any time during the three years preceding the filing of this Complaint through the final disposition of this matter. Plaintiff seeks unpaid overtime, liquidated damages, attorneys' fees, and costs under Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 201–219, and under the Arkansas Minimum Wage Act, Ark. Code Ann. §§ 11-4-201 through 11-4-222 ("AMWA"). Plaintiff's FLSA claims are asserted as a collective action under 29 U.S.C. § 216(b), and his AMWA claims are asserted on behalf of himself and every employee who joins this action by filing written consent under Ark. Code Ann. § 11-4-218(e)(4).

**I.**

## INTRODUCTION

1. This is a collective action to recover overtime wages and liquidated damages under the FLSA and the AMWA.

2. Goodyear pays the salaried employees at its Texarkana plant a fixed salary and treats them as exempt from overtime. They are not exempt. Their duties do not meet any exemption, and the way Goodyear pays them defeats the one it would most likely claim.

3. Plaintiff and the Putative Collective Members work twelve-hour shifts on a "2-2-3" schedule: thirty-six (36) hours one week and forty-eight (48) hours the next. Every other week is an overtime week. Goodyear's own pay records say so.

4. Goodyear pays for four (4) of the eight (8) overtime hours in that two-week cycle. In some pay periods it pays none. The remainder it averages away, "banks," or charges back as hours "owed." That is not an overtime practice. It is a refusal to pay overtime.

5. Plaintiff and the Putative Collective Members regularly worked, and continue to work, more than forty (40) hours in particular workweeks without receiving the overtime premium required by the FLSA for all hours worked over forty (40).

6. Plaintiff asks that all similarly situated employees be notified of the pendency of this action and given the opportunity to join it.

## II.
## THE PARTIES

7. Plaintiff Christopher Sullivan is an individual residing in Ashdown, Little River County, Arkansas. Goodyear employs Plaintiff as a salaried employee at its Texarkana tire plant, where he works as a shift scheduler. Plaintiff's written consent to become a party plaintiff is attached as Exhibit A.

8. The Putative Collective Members are the current and former salaried employees of Goodyear who worked at the Texarkana Plant at any time during the three years preceding the filing of this Complaint through the final disposition of this matter, and who were subjected to the same pay practices described below. The full definition of the Putative Collective Members, for purposes of certifying the FLSA Collective, is set forth in Paragraph 55. The AMWA Collective Members, defined in Paragraph 68, are the members of that group who worked at the Texarkana Plant during the two years preceding the filing of this Complaint.

9. Defendant The Goodyear Tire & Rubber Company is an Ohio corporation with its principal place of business at 200 Innovation Way, Akron, Ohio 44316. Goodyear is registered to do business in the State of Arkansas and may be served with process through its registered agent for service of process, Corporation Service Company, 300 S. Spring Street, Suite 900, Little Rock, Arkansas 72201.

## III.
## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. § 1331 because this action arises under 29 U.S.C. §§ 201–219, and under 29 U.S.C. § 216(b).

11. This Court has supplemental jurisdiction over Plaintiff's AMWA claims under 28 U.S.C. § 1367(a) because they arise from the same pay practices, and form part of the same case or controversy, as the FLSA claims.

12. This Court has personal jurisdiction over Goodyear. Goodyear owns and operates the Texarkana Plant in Miller County, Arkansas, employs Plaintiff and the Putative Collective Members there, and is registered to transact business in Arkansas.

13. Plaintiff's claims arise from Goodyear's conduct in this District. Goodyear's managers at the Texarkana Plant set, communicated, and applied the pay practices described below to employees who work at the plant, and the overtime wages at issue were earned, and went unpaid, in this District.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (c)(2) because Goodyear is subject to personal jurisdiction in this District with respect to this action, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred here. Miller County and Little River County, Arkansas lie within the Texarkana Division. 28 U.S.C. § 83(b)(1).

## IV.
## FACTUAL BACKGROUND

### *A. Goodyear runs the Texarkana plant around the clock on twelve-hour shifts.*

15. On or about June 7, 2021, Goodyear completed its acquisition of Cooper Tire & Rubber Company. Cooper had operated a tire plant in Texarkana since 1964. Goodyear now operates that plant at 3500 Washington Street, Texarkana, Arkansas 71854 (the "Texarkana Plant").

16. The Texarkana Plant makes tires every day of the year except designated holidays and shutdowns. Its 2026 work schedule divides the workforce into four crews. The A and C crews and the B and D crews alternate, and each day crew works 7:00 a.m. to 7:00 p.m. and each night crew works 7:00 p.m. to 7:00 a.m. The shifts are twelve hours long.

17. Goodyear pays the salaried employees at the Texarkana Plant through its own payroll group. Its 2026 "US Bi-Weekly Salary Payroll Processing Calendar" lists "Texarkana Salaried" as a separate line. Pay periods run from Sunday through Saturday, two weeks at a time, and Goodyear issues paychecks every other Friday.

***B. The 2-2-3 schedule: thirty-six hours one week, forty-eight the next.***

18. Plaintiff works what Goodyear calls the "2-2-3" schedule. He works three twelve-hour shifts in one week, or thirty-six (36) hours, and four twelve-hour shifts in the next, or forty-eight (48) hours. Goodyear's own emails refer to the "2-2-3 lineup" and the "2-2-3 Schedule."

19. Over a fourteen-day pay period, that schedule totals eighty-four (84) hours. In the long week, it puts eight (8) hours over the forty (40) hour threshold in Section 207(a) of the FLSA.

20. On information and belief, the Putative Collective Members who work the 2-2-3 schedule work the same alternating pattern of thirty-six and forty-eight hours, and Goodyear pays them under the same salaried payroll practices.

***C. Goodyear pays eighty hours of salary and four hours of overtime for eighty-four hours of work.***

21. Goodyear's pay records for Plaintiff show the practice. For the pay period June 21, 2026 through July 4, 2026, Goodyear paid Plaintiff "Regular Pay Salary" for eighty (80) hours in the amount of $2,838.58. It paid "Extra Hours (1.5 OT)" for four (4) hours at a rate of $53.235 per hour, or $212.94. The same pay record reports "Total Hours Worked" of eighty-four (84).

22. Goodyear therefore knew Plaintiff worked eighty-four hours in that period. It knew that forty-eight of them fell in a single workweek. It paid the overtime premium on four of the eight hours over forty. It paid nothing on the other four.

23. Goodyear wrote that limit into its instructions to salaried employees. In an email addressed to "Salaried Extra Hours and Salaried Non-exempt Salaried (salaried time card) associates," Goodyear told employees on the 2-2-3 schedule: "please enter your 4 hours of natural overtime for the bi-weekly period on your scheduled Saturday work day." The instruction says four. The schedule produces eight.

24. Goodyear arrives at four by averaging the two weeks. It nets the thirty-six-hour week against the forty-eight-hour week and pays overtime only on the average. The FLSA does

not permit that. Each workweek stands alone, and hours worked in one week cannot be averaged with another to avoid overtime. 29 C.F.R. § 778.104. A short week does not erase the overtime earned in the long one.

25. The next pay period was worse. For the period July 5, 2026 through July 18, 2026, Goodyear paid Plaintiff eighty (80) hours of salary and reported "Total Hours Worked" of eighty (80). It paid no overtime of any kind. Goodyear's Workday system carries time entries for Plaintiff of four (4) hours for the week of July 5 through July 11, 2026, and four (4) hours for the week of July 19 through July 25, 2026.

26. Plaintiff has been told he is not permitted to claim any overtime now. On or about July 29, 2026, Richard Megason, the master scheduler and Plaintiff's manager, asked Plaintiff, "why are you claiming overtime you didn't work." Plaintiff had not missed a day or an hour in the forty-eight-hour weeks for which he claimed four hours of overtime. Mr. Megason then told Plaintiff, "we had someone claiming overtime they didn't earn and they no longer work here."

***D. "Banked" hours and "payback": Goodyear takes back what it owes.***

27. When Goodyear needs a salaried employee to work extra time to cover an open position, it does not pay for that time. It allows the employee to "bank" the hours. The employee receives no pay for them.

28. Goodyear tracks those banks employee by employee. It maintains a spreadsheet with a row for each salaried employee, columns labeled "OT," "Owe," "Sick," and "Vac," and a line for each employee labeled "Bank (Owe)." On the sheet for the period ending July 3, 2026, balances for more than a dozen salaried employees range from a negative 24.0 hours to a positive 56.0 hours.

29. Goodyear also requires employees to "pay back" time. On November 9, 2025, Mr. Megason sent a "High importance" email titled "TIME OWED" to Plaintiff and other salaried

employees: "If you owe time I need you to send to me what you show so I can compare it to what I show. This will need to be paid back before the end of the year." Plaintiff answered the same day: "I believe I am caught up, unless you show otherwise."

30. The practice continued into 2026. On July 28, 2026, a Goodyear process specialist wrote to six colleagues that he would be "approving your vacation as well and keeping up with your pay back," and told them to "make sure you send it to me."

31. A recording in Plaintiff's possession captures Bruce Ward, the Production Business Leader for Plaintiff's department, which includes the tire builders and manning, explaining the system to salaried employees. He said: "If you took vacation that Sunday, you would still get your natural four hours. But if you picked up another day to cover for that day, you wouldn't get the natural." He explained that the make-up rule "trims over time and trims what you got to pay back," and he summarized the result in three words: "there's no overtime."

32. The same recording describes how hours are held back and tracked. It addresses what happens when employees "have to cover a bunch of shifts in a row": they "can't carry any of it as overtime," and the answer is to "hold back." Mr. Ward repeated what an employee had told him: "I've done held back 24 hours." He told the employees that Goodyear keeps "another spreadsheet," that "[t]hese are the days that we were out," and that "these are the hours you owe." If an employee works an extra day, he said, "I worked this day 12 hours, I'm going to plug that in there. That's the way we're going to keep up with it."

33. On or about July 29, 2026, Mr. Megason told Plaintiff that Plaintiff owed twenty-four (24) hours of "payback" for days Goodyear took out of production and for a day the plant shut down for weather. Goodyear then took eight (8) hours of Plaintiff's holiday pay and eight (8) hours of his overtime to pay back one day. Mr. Megason told Plaintiff he still owed twelve (12) hours

and would "owe 24 more at the end of August," because Goodyear intended to take more time out of production.

34. Goodyear also requires employees to work on their scheduled days off to "pay back" the hours it declares owed.

35. A private employer may not pay overtime in time off, and it may not take back earned overtime and holiday pay to cover days its own production schedule removed. Compensatory time in place of overtime pay is available only to public agencies. 29 U.S.C. § 207(o). Goodyear is not one.

***E. Time worked before and after the paid shift.***

36. On information and belief, Goodyear also requires Putative Collective Members to arrive before the start of their shifts and to remain after the end of them to hold meetings, hand off work, and complete assignments. Goodyear does not pay for that time, and it has told employees they may not claim it.

***F. No exemption applies to Plaintiff or the Putative Collective Members.***

37. Goodyear classifies Plaintiff and the Putative Collective Members as salaried employees and treats them as exempt from the FLSA's overtime requirement, except for the four hours it chooses to pay. Goodyear bears the burden of proving that any exemption applies. It cannot.

38. The work Plaintiff performs is production support. Goodyear's own description of the scheduler's duties lists them: assigning swing builders and utilities, picking up timecards at the start of the shift, preparing the shift efficiency report, sending the manning text, distributing manning when builders go home, handling short-notice vacations, updating the 2-2-3 lineup, and tracking serviceman overtime. Those duties apply Goodyear's schedules and rules. They do not manage the enterprise.

39. Plaintiff's primary duty is not the management of Goodyear or of a customarily recognized department or subdivision of it. 29 C.F.R. § 541.100. Plaintiff does not have the authority to hire or fire other employees, and his suggestions about the hiring, firing, advancement, or promotion of others are not given particular weight.

40. Plaintiff's primary duty is not office or non-manual work directly related to the management or general business operations of Goodyear that requires the exercise of discretion and independent judgment on matters of significance. 29 C.F.R. § 541.200. He carries out schedules, lineups, and manning rules that Goodyear's managers set.

41. Goodyear's pay practices defeat the salary-basis requirement as well. An exempt employee must receive a predetermined amount each pay period that is not subject to reduction because of variations in the quality or quantity of the work. 29 C.F.R. § 541.602(a). Goodyear charges salaried employees "owed hours" against their holiday pay, their overtime, and their time banks whenever it takes days out of production. A salary that shrinks when the employer shuts down the line is not a guaranteed salary. That is an actual practice of improper deductions, and an actual practice "demonstrates that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). The exemption is lost for employees in the same job classification who work for the managers responsible for the deductions. 29 C.F.R. § 541.603(b).

42. Goodyear's own paperwork also refers to "Salaried Non-exempt Salaried (salaried time card) associates," and Goodyear pays four hours of overtime in every two-week cycle. Goodyear cannot treat these employees as non-exempt when it suits its payroll and as exempt when it counts the hours. Pleading in the alternative under Federal Rule of Civil Procedure 8(d), Plaintiff alleges that Goodyear misclassified Plaintiff and the Putative Collective Members as exempt and, if Goodyear contends they are non-exempt, that it failed to pay them overtime for all hours worked over forty (40) in each workweek.

### *G. Goodyear knew.*

43. Goodyear knew exactly how many hours Plaintiff and the Putative Collective Members worked. Its pay records report them: "Total Hours Worked," eighty-four. Its own instructions cap overtime at four hours for a schedule that produces eight. Its managers track "time owed" by name and send the balances by email.

44. When Plaintiff claimed his overtime, Goodyear's response was to question the claim and to mention an employee who "no longer work[s] here." It did not pay.

45. Goodyear is a publicly traded, multinational manufacturer with payroll, human resources, and legal functions that administer wage and hour laws. It knew, or showed reckless disregard for whether, its conduct violated the FLSA. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Goodyear did not act in good faith and had no reasonable grounds to believe its conduct complied with the FLSA. 29 U.S.C. § 260.

## V.
## CAUSE OF ACTION: FAILURE TO PAY OVERTIME UNDER THE FLSA

### *A. FLSA coverage.*

46. Plaintiff incorporates the foregoing paragraphs as though fully set forth here.

47. At all material times, Goodyear has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d), and an enterprise within the meaning of Section 3(r), 29 U.S.C. § 203(r).

48. At all material times, Goodyear has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A), in that it has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, and has had an annual gross volume of sales made or business done of

not less than $500,000.00. Goodyear manufactures tires at the Texarkana Plant and sells them throughout the United States.

49. At all material times, Plaintiff and the Putative Collective Members were individual employees engaged in commerce or in the production of goods for commerce, as required by 29 U.S.C. § 207.

***B. Goodyear failed to pay overtime for all hours over forty.***

50. Goodyear violated 29 U.S.C. §§ 207(a) and 215(a)(2) by employing Plaintiff and the Putative Collective Members in workweeks longer than forty (40) hours without compensating them for all hours over forty (40) at a rate of at least one and one-half times the regular rate at which they were employed.

51. Goodyear misclassified Plaintiff and the Putative Collective Members as exempt from the FLSA's overtime requirement. No exemption applies, and Goodyear's practices of averaging workweeks, banking hours, and charging back "owed hours" are not authorized by the FLSA.

52. Goodyear knowingly, willfully, and with reckless disregard carried out this practice. 29 U.S.C. § 255(a); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Its decisions not to pay overtime for all hours worked over forty (40) in each workweek were neither reasonable nor in good faith.

53. Plaintiff and the Putative Collective Members are therefore entitled to overtime wages for all hours worked over forty (40) in each workweek at one and one-half times their regular rate of pay, an equal amount as liquidated damages, and their attorneys' fees and costs. 29 U.S.C. § 216(b).

## VI.
## COLLECTIVE ACTION ALLEGATIONS

54. Plaintiff incorporates the foregoing paragraphs as though fully set forth here.

55. Plaintiff brings this action under 29 U.S.C. § 216(b) on behalf of himself and the following collective (the "FLSA Collective"), the members of which are the Putative Collective Members:

> ALL CURRENT AND FORMER SALARIED EMPLOYEES OF THE GOODYEAR TIRE & RUBBER COMPANY WHO WORKED AT ITS TEXARKANA TIRE PLANT AT ANY TIME DURING THE THREE (3) YEARS PRECEDING THE FILING OF THIS COMPLAINT THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE CLASSIFIED OR TREATED AS EXEMPT FROM THE FLSA'S OVERTIME REQUIREMENTS, AND WHO WORKED MORE THAN FORTY (40) HOURS IN ONE OR MORE WORKWEEKS.

56. Other salaried employees at the Texarkana Plant have been subjected to the same patterns, practices, and policies that Goodyear applied to Plaintiff. Goodyear paid them from the same payroll group, under the same salary structure, subject to the same four-hour overtime instruction, with the same classification, and with the same banking and "payback" practices.

57. Plaintiff and the Putative Collective Members are similarly situated. They worked, and continue to work, schedules that exceed forty (40) hours in particular workweeks. Goodyear did not pay them the overtime premium for all of those hours. That result follows from generally applicable policies of Goodyear. It does not depend on the personal circumstances of any employee.

58. Plaintiff's experience is typical of the experience of the Putative Collective Members. Their specific job titles and precise duties do not prevent collective treatment, because the question that decides liability is the same for each of them: whether Goodyear may treat a salaried employee as exempt while averaging weeks, banking hours, and charging back "owed hours." That question has one answer.

59. Although the amount of damages may vary from employee to employee, that variation does not detract from the common nucleus of liability facts. The identity of the Putative Collective Members and the hours each worked can be determined from Goodyear's payroll, timekeeping, and personnel records, including its Workday entries and its "Bank (Owe)" balances.

60. Absent a collective action, many Putative Collective Members will not obtain redress, and Goodyear will keep the proceeds of its violations. Individual litigation would be unduly burdensome to the courts and to the parties. A single proceeding will promote judicial economy and consistent results.

61. Plaintiff therefore asks the Court to certify the FLSA Collective as defined in Paragraph 55 and to authorize prompt notice to its members.

## VII.
## CAUSE OF ACTION: FAILURE TO PAY OVERTIME UNDER THE ARKANSAS MINIMUM WAGE ACT

62. Plaintiff incorporates the foregoing paragraphs as though fully set forth here.

63. At all material times, Goodyear has been an employer within the meaning of the AMWA, Ark. Code Ann. § 11-4-203(4)(A), and Plaintiff and the AMWA Collective Members have been its employees within the meaning of Ark. Code Ann. § 11-4-203(3). None of them is employed in a bona fide executive, administrative, or professional capacity. Ark. Code Ann. § 11-4-203(3)(A).

64. The AMWA provides that no employer shall employ any of its employees for a workweek longer than forty (40) hours unless the employee receives compensation for the hours over forty (40) at a rate not less than one and one-half (1 1/2) times the regular rate of pay at which the employee is employed. Ark. Code Ann. § 11-4-211(a). The AMWA's overtime requirement parallels the FLSA's, and the same facts establish a violation of both.

65. Goodyear violated Ark. Code Ann. § 11-4-211(a) by employing Plaintiff and the AMWA Collective Members in workweeks longer than forty (40) hours at the Texarkana Plant, in Arkansas, without paying them one and one-half times their regular rate for all hours worked over forty (40). It did so by treating them as exempt, by averaging a thirty-six (36) hour week against a forty-eight (48) hour week, by "banking" hours in place of pay, and by charging back "owed hours" against their holiday pay and overtime.

66. Goodyear's violations were willful. Goodyear recorded the hours, limited overtime in writing to four hours for a schedule that produces eight, tracked the hours employees "owe," and told salaried employees, in the words of its own manager, "there's no overtime."

67. Plaintiff and the AMWA Collective Members are therefore entitled to recover the full amount of their unpaid overtime wages and their costs and reasonable attorneys' fees. Ark. Code Ann. § 11-4-218(a)(1). Because Goodyear's violations were willful, they are also entitled to liquidated damages in an additional amount up to the amount of the unpaid wages. Ark. Code Ann. § 11-4-218(a)(2).

68. Plaintiff asserts his AMWA claims for himself and for the following employees, each of whom may join this action as a party plaintiff by filing written consent (the "AMWA Collective" and its members, the "AMWA Collective Members"):

> ALL CURRENT AND FORMER SALARIED EMPLOYEES OF THE GOODYEAR TIRE & RUBBER COMPANY WHO WORKED AT ITS TEXARKANA TIRE PLANT AT ANY TIME DURING THE TWO (2) YEARS PRECEDING THE FILING OF THIS COMPLAINT THROUGH THE FINAL DISPOSITION OF THIS MATTER, WHO WERE CLASSIFIED OR TREATED AS EXEMPT FROM OVERTIME REQUIREMENTS, AND WHO WORKED MORE THAN FORTY (40) HOURS IN ONE OR MORE WORKWEEKS.

69. The AMWA Collective Members are similarly situated to Plaintiff for the reasons alleged in Paragraphs 55 through 61, which apply equally to the AMWA claims. Each AMWA

Collective Member who wishes to join this action will give written consent to become a party plaintiff and will file that consent in this Court, as Ark. Code Ann. § 11-4-218(e)(4) requires. Plaintiff will file those consents.

70. The statute of limitations for AMWA claims is two (2) years. Ark. Code Ann. § 11-4-218(g). Plaintiff asks the Court to authorize notice to the AMWA Collective Members together with the notice to the Putative Collective Members, so that those who join may assert both claims in one action.

## VIII. JURY DEMAND

71. Plaintiff demands a trial by jury on all issues so triable. Fed. R. Civ. P. 38(b).

## IX. PRAYER

Plaintiff asks that Goodyear be cited to appear and answer, and that Plaintiff, the Putative Collective Members, and the AMWA Collective Members recover judgment against Goodyear as follows:

(a) An order certifying the FLSA Collective as defined in Paragraph 55, authorizing notice to the AMWA Collective as defined in Paragraph 68, and requiring Goodyear to produce the names, last known addresses, e-mail addresses, and cellular telephone numbers of all Putative Collective Members;

(b) An order approving the form and content of a notice to be sent to all Putative Collective Members advising them of the pendency of this action and of their right to join it under the FLSA and the AMWA;

(c) A judgment that Goodyear violated the FLSA and the AMWA by failing to pay overtime for all hours worked over forty (40) in each workweek, and that the violations were willful;

(d) An award of unpaid overtime wages due to Plaintiff and to each Putative Collective Member who joins this action, under the FLSA and the AMWA, calculated at one and one-half times the regular rate for all hours worked over forty (40) in each workweek;

(e) An award of liquidated damages equal in amount to the unpaid overtime wages under 29 U.S.C. § 216(b), and liquidated damages under Ark. Code Ann. § 11-4-218(a)(2) in the amount the law allows;

(f) An award of reasonable attorneys' fees and the costs and expenses of this action;

(g) An award of pre-judgment and post-judgment interest at the maximum rate allowed by law, to the extent liquidated damages are not awarded;

(h) A service award to Plaintiff as permitted by law;

(i) An order compelling an accounting of Goodyear's books and records, at Goodyear's expense, should discovery prove inadequate; and

(j) Such other and further relief, at law or in equity, to which Plaintiff, the Putative Collective Members, and the AMWA Collective Members are justly entitled.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
bhommel@hommelfirm.com
HOMMEL LAW FIRM PC
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
(903) 596-7100 Telephone/Facsimile

**ATTORNEY FOR PLAINTIFF AND THE PUTATIVE COLLECTIVE MEMBERS**